***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Baddour, with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. This case is subject to the North Carolina Worker's Compensation Act.
4. An employment relationship existed between Plaintiff and Employer-Defendant Pratt Industries USA, Inc., and Phoenix was the Insurer on the risk on the date of injury of November 5, 2009.
5. On November 5, 2009, Plaintiff allegedly suffered an injury to his right knee and leg when he was at work operating a dump truck and a fire started.
6. Plaintiff's Average Weekly Wage is $850.39 per the Form 22, subject to verification by the Plaintiff.
 *********** EXHIBITS
The following exhibits were admitted into evidence:
 (a) Stipulated Exhibit 1: Pre-Trial Agreement
 (b) Stipulated Exhibit 2A: Indexed Set of Paginated Exhibits
 (c) Stipulated Exhibit 2B: Plaintiff's Recorded Statement on Compact Disc
 (d) Stipulated Exhibit 3: Incident Report
 (e) Stipulated Exhibit 4: Photographs
 *********** ISSUES *Page 3 (a) Did Plaintiff suffer a compensable injury by accident on November 5, 2009 while employed by Employer-Defendant?
 (b) If so, to what benefits, if any, is Plaintiff entitled?
 ***********
Based upon the competent evidence of record and the reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff began working for Employer-Defendant as a front-end loader operator around September 2008. In this position, Plaintiff was responsible for driving his vehicle to commercial customers' businesses and picking up their garbage. Typically, Plaintiff arrived at a customer's location, lowered the arms of the front end loader, and slid them into slots on the side of customers' garbage bins. The arms would then lift the bin over the cab and dump the garbage into the bed of the truck.
2. Plaintiff's job duties included being able to climb in and out of his truck and climb into the rear of the front end loader for cleaning purposes. Plaintiff also had to "jack" or tilt the cab of the truck forward to check for papers or cardboard lodged beneath the cab, as this created a fire hazard. On any given day, drivers such as Plaintiff exited their trucks onto a variety of surfaces including gravel, mud, and sloped areas.
3. On November 5, 2009, Plaintiff was picking up a dumpster at a Sears store in Wilkesboro, North Carolina when Sears employee Robert Cannon alerted him to a fire behind the cab of his truck.
4. Plaintiff exited the truck by climbing out using three point contact; Plaintiff did not jump out of the truck. *Page 4 
5. After exiting the truck, Plaintiff extinguished the fire. After the fire was extinguished, Plaintiff needed to tilt the truck's cab forward in order to remove cardboard that was lodged between the cab and the body of the truck. In order to do this, Plaintiff first had to raise the truck's forks which were preventing the cab from tilting forward. Plaintiff stepped onto the driver's side step, reached into the cab, and used the controls to move the truck's forks. When he stepped back off the step onto the ground, Plaintiff's right knee gave way, causing him to fall.
6. Plaintiff presented to Concentra on November 5, 2009 with complaints of right knee pain which occurred when he stepped out of his truck at work and his knee gave out. Dr. William Carter assessed Plaintiff with a closed fracture of the patella.
7. Plaintiff also presented to Dr. Jonathan Yoder of Orthopaedic Specialists of the Carolinas on November 5, 2009. Dr. Yoder noted Plaintiff sustained an injury to his knee while in the military which apparently resulted in a loose body and a partial ACL tear. He further noted Plaintiff was getting out of a front end loader when he put his right foot on the ground to step down and felt his knee give way.
8. On November 10, 2009, Plaintiff presented to Dr. William Satterfield of Orthopaedic Specialists of the Carolinas for a surgical consultation. Dr. Satterfield noted Plaintiff was getting out of his truck and felt the knee give. On November 11, 2009, Dr. Satterfield performed surgery to repair the patellar tendon and excise a bone fragment.
9. Following the surgery, Plaintiff followed up with Dr. Satterfield until January 27, 2010, when Plaintiff reported he was doing 90% better with no complaints and no pain. Dr. Satterfield noted that Plaintiff could return to regular duty work effective February 1, 2010. *Page 5 
Plaintiff returned to work full duty for Defendant-Employer and, as of the date of the hearing before the Deputy Commissioner, he continued to work for Defendant-Employer.
10. At the hearing before the Deputy Commissioner, Plaintiff testified that on November 5, 2009, after he pulled up to service a dumpster at Sears, he noticed a fire in the back of his truck. Plaintiff testified he put the parking brake on, tipped the cab forward, grabbed the fire extinguisher from a tool box, then climbed out of the truck to put the fire out. Plaintiff had experienced fires in his truck prior to the date in question, and he testified that the fire on November 5, 2009 was not surprising to him in and of itself. Plaintiff testified that, after extinguishing the fire, there was still a hazard posed by cardboard lodged between the cab and the body of the truck. Plaintiff testified that he stepped onto the driver's side step, reached into the cab, and used the controls to raise the forks above the cab so he could tip the cab forward to retrieve a piece of cardboard between the truck and the cab. Plaintiff testified that when he stepped back down, he stepped onto a graded surface which he felt was at an angle. Plaintiff confirmed that he used three point contact when stepping down from the truck.
11. This testimony conflicts with Plaintiff's recorded statement and the medical records wherein Plaintiff did not mention stepping out of a tilted cab, nor did he mention stepping out onto a graded surface, or stepping out of his truck to put out a fire. Plaintiff testified that, prior to the recorded statement being taken, he told the adjuster there was a fire on November 5, 2009 and that he was acting in haste. He testified that the adjuster did not ask him to discuss the fire during the recorded statement. However, during the recorded statement, Plaintiff was given an opportunity to elaborate on the circumstances surrounding his injury on November 5, 2009. *Page 6 
12. Plaintiff also did not report any fire or graded/sloped surface to his supervisor, Shawn Tyson, on November 5, 2009 or at any point thereafter. Plaintiff did not mention a fire or a graded/sloped surface in his incident report. Mr. Tyson testified that, if Plaintiff had mentioned anything about a fire, he would have gone to Plaintiff's location. He also testified that Plaintiff did not say anything to him about the slope of the ground where he stepped out of his truck. Mr. Tyson testified that employees exit their trucks anywhere from ten times to forty or fifty times per day, depending on their route.
13. In his recorded statement, discovery responses and on direct examination at the hearing, Plaintiff denied having a history of problems with his right knee, injury to his right knee, or treatment of his right knee. Plaintiff admitted on cross examination he was treated for right knee pain while he was in the military.
14. In his recorded statement, Plaintiff denied ever being involved in motor vehicle accidents. However, Plaintiff admitted on cross examination that he had had an accident with a motorcyclist and had also backed into other vehicles while driving at work.
15. Plaintiff presented the testimony of Robert Cannon, the Sears employee who alerted him to the fire in his truck on November 5, 2009. Mr. Cannon testified that, after he alerted Plaintiff to the fire and witnessed Plaintiff exit the truck to get his fire extinguisher, he left the area in order to retrieve a fire extinguisher. When he returned, the fire had been extinguished and Plaintiff was lying on the ground. When asked whether he knew how Plaintiff hurt himself, Mr. Cannon testified that he assumed that Plaintiff had hurt his leg by jumping out of the truck.
16. Mr. Tyson testified there was no damage to Plaintiff's truck, and there are no written reports of fire damage to Plaintiff's truck. Mr. Tyson explained that a fire extending *Page 7 
from the base of the truck to the Hercules lift could cause various lines to melt. However, there were no records reflecting any damage to Plaintiff's truck or any repairs made following the incident.
17. Dr. Satterfield testified that most patellar ruptures are related to degenerative changes, and they happen spontaneously. He testified that a patellar tendon rupture can happen when someone gets out of a chair, or with walking and turning.
18. Plaintiff informed Dr. Satterfield that he was injured when he put his leg down and, "just felt his knee give way." Dr. Satterfield was not aware of any history of Plaintiff extinguishing a fire or jumping from the truck onto a graded slope. Dr. Satterfield opined that either mechanism of injury could have produced the same result.
19. Based upon the preponderance of the evidence in view of the entire record, the Full Commission finds that Plaintiff did not sustain an injury by accident on November 5, 2009. In so finding, the Full Commission deems Plaintiff's testimony regarding the history of his injury not credible based upon the inconsistencies between Plaintiff's testimony and the other evidence of record.
20. Even if Plaintiff's testimony were accepted as credible, the Full Commission finds that Plaintiff's injury occurred under normal work conditions during the performance of his regular duties in the usual and customary manner. Plaintiff's injury occurred after any fire in his truck had been extinguished when he stepped down from the driver's side step, an action that he performed numerous times every day.
 ***********
The foregoing stipulations and findings of fact engender the following: *Page 8 
 CONCLUSIONS OF LAW
1. Plaintiff did not suffer an injury by accident within the meaning of the North Carolina Workers' Compensation Act and therefore, his claim is not compensable. N.C. Gen. Stat. § 97-2(6).
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim for compensation under the North Carolina Workers' Compensation Act must be, and the same is hereby, DENIED.
2. Each side shall bear its own costs.
This the ___ day of September, 2011.
 S/________________ LINDA CHEATHAM COMMISSIONER
CONCURRING:
 S/_____________ TAMMY R. NANCE COMMISSIONER
 S/_____________ CHRISTOPHER SCOTT COMMISSIONER *Page 1